**In re Anonymous No. 111 D.B. 89**

Disciplinary Board Docket no. 111 D.B. 1989.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

FRIEDMAN, *Member,* July 20, 1990—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to this honorable court with regard to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent, born in 1947, was admitted to practice law in Pennsylvania in 1972. He currently maintains an office for the practice of law at [    ].

On October 18, 1989 the Office of Disciplinary Counsel filed a petition for discipline against respondent, alleging the following violations:

(A) D.R. 1-102(A)(4)—conduct involving dishonesty, fraud, deceit or misrepresentation;

(B) D.R. 9-102(A)—funds of a client to be maintained in an identifiable bank account, which funds are to be segregated from funds belonging to the lawyer;

(C) D.R. 9-102(B)(3)—requiring a lawyer to maintain complete records of client funds and to render appropriate accounts to the client;

(D) D.R. 9-102(B)(4)—requiring a lawyer to promptly pay to a client the funds the client is entitled to receive;

(E) R.P.C. 1.3—requiring a lawyer to act with reasonable diligence and promptness in representing a client;

(F) R.P.C. 1.4(a)—requiring a lawyer to keep a client informed about the status of a matter;

(G) R.P.C. 1.15(b)—requiring a lawyer to promptly deliver funds of a client to the client and, upon request, to render a full accounting.

On January 16, 1990 a hearing was held before Hearing Committee [    ]. The parties submitted a stipulation which was incorporated into the commit-

tee's findings of fact. The committee also made additional findings of fact. The only testimony received by the hearing committee was the testimony of respondent.

On May 7, 1990, the hearing committee filed its report and recommendation. The hearing committee found violations of D.R. 9-102(A), D.R. 9-102(B)(3), D.R. 9-102(B)(4), R.P.C. 1.4(a) and R.P.C. 1.15(b). The committee did not find violation of either D.R. 1-102(A)(4) or R.P.C. 1.3. The hearing committee recommended that respondent receive a private reprimand and a two-year period of probation.

On May 29, 1990 petitioner filed a brief on exceptions to the hearing committee's report and recommendation. Petitioner alleged that the hearing committee had erred in failing to find a violation of D.R. 1-102(A)(4) and R.P.C. 1.3. Petitioner furthermore contended that the hearing committee had erred in finding that respondent had remedied his client difficulties. Petitioner further objected to the recommended disposition and alleged that probation was contrary to Disciplinary Board rules and procedures.

On June 22, 1990 the matter was considered by the Disciplinary Board.

## FINDINGS OF FACT

The board adopts the following findings of facts which were the subject of the stipulation:

(1) Petitioner, whose principal office is located at 300 North Second Street, Commerce Building, Third Floor, Harrisburg, Pennsylvania 17101, is vested, pursuant to Rule 208 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct by any attorney admitted to practice law

in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [ ], Esq., was born in 1947, admitted to practice law in Pennsylvania in 1972, and currently maintains an office for the practice of law at [ ].

(3) In July 1987 respondent settled for $25,000 a personal injury action for [B]. On July 29, 1987 respondent deposited a $25,000 settlement draft of the [C] Insurance Company to respondent's checking account no. [ ] at the [D] Bank. This account is designated "General Account" and was utilized by respondent as a general office account. Such conduct was continuing in nature as no part of the escrow funds represented by the $25,000 settlement was ever maintained in any escrow account.

(4) Upon receipt of the $25,000 settlement for [B], respondent was entitled to a contingent fee of $8,333.33. Respondent's fee was to be prorated between [B] and the [E] Life Insurance Company, which had a subrogation interest relative to medical payments.

(5) The exact amount of the subrogation interest of [E] Life had not been determined as of the receipt of the $25,000 settlement. By letter of June 19, 1987 respondent advised [B] that the medical payments might total $4,813.81 but that the correct figure was subject to a determination of what the insurer had paid.

(6) On August 13, 1987 respondent should have maintained as escrow funds $16,666.67 relative to [B] as that amount of the $25,000 settlement net of respondent's fee of $8,333.33. On that date, respondent's account only contained a balance of $14,123.85, representing a shortage of $2,542.82.

This shortage was caused by the payment on August 13, 1987 of check no. 720, dated August 11, 1987, in the amount of $4,700, drawn on the account, and payable to respondent. The proceeds of the check for $4,700 were not used for any purpose relating to [B]. This conduct constituted a conversion by respondent to his own use of $2,542.82 in [B] settlement funds.

(7) By check no. 722, dated August 17, 1987, drawn on the account and payable to [B], respondent distributed $13,456.80 to [B]. The final amount due [B] was subject to respondent's determining the exact amount of the medical subrogation, and any other obligation payable from the settlement proceeds.

(8) By letter of September 14, 1987 the [E] Life Insurance Company advised respondent that the total of their subrogation interest was $3,277.89. After deducting the pro rata share of respondent's legal fee, [E] was due $2,185.26. At or about this time respondent was also advised that $730 was due from his client to [F] Associates Inc., which amount was to be paid from the settlement.

(9) On or about October 29, 1987 respondent deposited, or caused to be deposited, $2,185.26 to his account. Concurrently, respondent wrote check no. 792 for $2,185.26, payable to [E] Life, in satisfaction of the subrogation interest. The $2,185.26 deposit was required because of respondent's conversion to his own use of escrow funds of [B]. These funds were produced from personal funds of respondent and accepted by [E] Life in full satisfaction of [B's] obligation.

(10) On or about October 29, 1987 respondent's wife paid $730 from some source other than the account in satisfaction of [B's] debt to [F] Associ-

ates Inc. These funds were produced from personal funds of respondent or his wife.

(11) The payments of $2,185.26 and $730 made by or on behalf of respondent, on or about October 29, 1987, represent a total of $2,915.26 in [B] escrow funds that respondent failed to maintain in an escrow account and that he had converted to his own use.

(12) Subsequent to respondent's payments made on or about October 29, 1987 on behalf of [B], respondent failed to provide [B] with an accounting of the disbursements made from the $25,000 settlement. Respondent had made total distributions of $24,708.39 ($8,333.33 in fees; $13,456.80 to [B]; $2,185.26 to [E] Life; $730 to [F] Associates Inc.) from the $25,000 settlement and the balance of $291.61 was due to [B]. The $291.61 was thereafter not maintained in any escrow account and represents additional escrow funds respondent converted to his own use.

(13) Respondent was aware that during and subsequent to October 1987 petitioner was investigating respondent's handling of the [B] settlement funds. Despite this, respondent has never formulated any accounting for the [B] settlement or made any independent determination of whether [B] had received all he was due from the settlement.

(14) The $291.61 was paid by respondent to [B] on August 2, 1989, without any accounting, and only after petitioner suggested such payment seemed appropriate. The records maintained by respondent for the [B] funds and the account were incomplete and inaccurate.

(15) Respondent's failure to account to his client is a continuing violation. Prior to April 1, 1988 this conduct was governed by the Disciplinary Rules of the Code of Professional Responsibility. Subsequent

to April 1, 1988 this conduct is governed by the Rules of Professional Conduct.

(16) Respondent's failure, subsequent to the determination of the subrogation amount in September 1987, to pay [B] the balance due him of $291.61 from the July 1987 settlement until August 2, 1989 was a continuing violation, governed by the Disciplinary Rules and the Rules of Professional Conduct, before and after April 1, 1988, respectively.

(17) Copies of the following documents are authentic, material and relevant, except as specifically noted, to these proceedings and they may be submitted as evidence:

(a) June 8, 1989 letter of inquiry from petitioner to respondent.

(b) July 5, 1989 letter of respondent to petitioner in reply to petitioner's June 8, 1989 letter of inquiry. All references to [G] and [H] are not relevant.

(c) July 18, 1989 letter of petitioner to respondent. All references to [G], [H], [I], and [J] are not relevant.

(d) August 2, 1989 letter of respondent to [B] and copy of enclosed check no. 1345 of respondent for $291.61 payable to [B].

(e) August 3, 1989 letter, without enclosures, of respondent to petitioner in reply to petitioner's letter of July 18, 1989. All references to [H], [J], and [I] are not relevant.

The following additional findings of fact were found by the hearing committee and adopted by the board:

(1) Respondent is 42 years of age and has two boys from a first marriage and two girls, ages 3 and 6, by a second marriage.

(2) Respondent resides at [   ] and is a sole practitioner with his office located at [   ].

(3) Respondent graduated from [ ] School of Law in 1972, graduated cum laude and made law review. From 1972 through 1981 he was employed by [K] Legal Services as a staff attorney and for the last three years as director of litigation with responsibility for supervising 45 attorneys. In 1982, he commenced private practice.

(4) From 1981 through 1987, family problems developed with his two children by his first marriage. Visitation became a serious problem, the children had constant problems in school and falling grades, and they adopted antisocial attitudes. Court action by respondent to gain custody of the boys was unsuccessful in 1985. The boys came to live with respondent in the summer of 1986 and it was the intention of respondent that they stay for the following school year. The older son, [L], did not want to stay and returned to his mother. The younger son, [M], remained with respondent. [L's] grades were poor during the school year and he refused to visit respondent. At approximately Easter 1987, [M] decided he did not want to stay with respondent. [M] lost interest in outside activities and his grades declined. In June 1987, [M] ran away from home and a petition filed by respondent to obtain custody was unsuccessful.

(5) In addition to devoting a great deal of time, energy and thought to correcting the family problems, respondent had serious back problems which required hospitalization in the fall of 1987 for a herniated disc and pneumonia, and he did not return to his office until January 1988. His personal problems consumed a great portion of his life, including his professional life.

(6) When the client's $25,000 settlement check came to respondent's office, respondent's escrow account was confused in that it did not balance.

Respondent admitted that he was not paying attention to his business or the practice of law. During his recuperation from his hospitalization and illness, he determined to return to his office, assume control of the books, review all files, identify any problems and contact clients and he performed those tasks upon his return to his office.

(7) Respondent was appointed as an arbitrator in [ ] County for two terms, was a former member of the Board of Directors of the [ ] County Bar Association, ran the pro bono program for the bar association for five years in cooperation with the bar and legal services, has been court-appointed counsel for dependent children since 1985 and is the solicitor for the [ ] Leasing Authority.

(8) Respondent did not intend to cheat his client.

(9) Disciplinary counsel reviewed respondent's books and did not find any problems prior to or subsequent to the [B] matter.

(10) Respondent had three prior informal admonitions which occurred around the same time as the [B] matter.

(11) Respondent completely cooperated with Disciplinary Counsel during its investigation.

## DISCUSSION

The board has no difficulty in affirming the hearing committee's holding that respondent violated D.R. 9-102(A), D.R. 9-102(B)(3), D.R. 9-102(B)(4), R.P.C. 1.4(a) and R.P.C. 1.15(b). Petitioner, however, contends that the hearing committee erred in finding no violation of D.R. 1-102(A)(4) and R.P.C. 1.3.

D.R. 1-102(A)(4) prohibits conduct involving dishonesty, fraud, deceit or misrepresentation. The hearing committee found that respondent had no

intent to be "dishonest, fraudulent, deceitful, or misrepresentative." Petitioner contends that respondent's admission that he converted his client's funds constitutes a violation of D.R. 1-102(A)(4). We find petitioner's argument to be persuasive.

Respondent stipulated that he converted his client's funds to his own use. (stipulation of fact nos. 6, 11 and 12). He is bound by the stipulation. Disciplinary Rule 89.131. The committee's finding that petitioner had no intent to cheat his client is not dispositive. The fact that he converted the funds to his own use constitutes a violation of D.R. 1-102(A)(4). *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69 (1987); *Office of Disciplinary Counsel v. Kissel,* 497 Pa. 467, 442 A.2d 217 (1982).

Petitioner also excepts to the committee's finding that there was no violation of R.P.C. 1.3 which requires a lawyer to act with reasonable diligence and promptness in representing a client. Petitioner bases its argument on respondent's failure to pay the balance owed his client, $291.61, for a period in excess of two years. The testimony, however, indicated that respondent was not aware that these funds were owing until notified by petitioner. Upon receipt of notification, respondent made prompt payment. Although respondent certainly should have prepared an accounting at time of distribution his failure to do so does not violate R.P.C. 1.3. The purpose of R.P.C. 1.3 is to prevent procrastination and undue delay. See comment to R.P.C. 1.3. As the committee found, respondent sued and settled the case in a timely manner. His inadvertent failure to remit the settlement balance was not the product of procrastination. We agree that no violation of R.P.C. 1.3 has been established.

We have also adopted the committee's additional findings of fact. Petitioner excepts in part to additional finding no. 6. There is sufficient testimony on the record to support the committee's findings that respondent did "return to his office, assume control of the books, identify any problems and contact clients." Contrary to the petitioner's argument, the committee did not find that all problems were satisfactorily resolved by petitioner at that time. Petitioner's exceptions are therefore unfounded.

## DISPOSITION

The committee recommended that respondent receive a private reprimand and be placed on probation for a period of two years. Petitioner contends that respondent should be suspended. We agree with petitioner.

The conversion of a client's funds is a serious breach of trust. *In re Anonymous No. 32 D.B. 83,* 37 D.&C. 3d 198 (1984). As such, the imposition of public discipline is appropriate. The extent of the public discipline, however, depends upon the mitigating or aggravating circumstances of the case. *Office of Disciplinary Counsel v. Ewing,* 496 Pa. 35, 436 A.2d 139 (1981).

We have adopted the hearing committee's additional findings of fact which indicate multiple mitigating factors. During the time period in which the conversion occurred, respondent was having serious personal difficulties including family and health problems. Furthermore, a review of respondent's records by petitioner revealed no other financial improprieties. With the exception of three informal admonitions which occurred during the same time period, respondent enjoyed a clean record. Respondent furthermore has made substantial efforts to

resolve his personal difficulties. He also has made great strides in resolving the prior difficulties with his practice. Most importantly, however, is the committee's finding that respondent did not intend to permanently deprive his client of the client's funds.

As is often stated, the primary purpose of our system of discipline is to protect the public from unfit attorneys and to maintain the integrity of the legal system. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). We believe, under the circumstances of this case, that petitioner's recommendation of a three-month suspension is both appropriate and consistent with that purpose. *Office of Disciplinary Counsel v. Kochel,* 515 Pa. 449, 529 A.2d 1075 (1987).

## RECOMMENDATION

The board unanimously recommends that respondent be suspended from the bar of the Commonwealth for a period of three months. It is further recommended that the costs of these proceedings be paid by respondent.

Ms. Heh did not participate in the adjudication.

## ORDER

And now, October 16, 1990, upon consideration of the report and recommendations of the Disciplinary Board dated July 20, 1990, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of three months. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen files a dissenting statement in which Mr. Justice Papadakos joins.

## DISSENTING STATEMENT

LARSEN, *J.*, October 16, 1990 — I dissent from the entry of the order suspending respondent from the Bar of the Commonwealth for a period of three months.

Respondent, [   ], converted client funds to his own use and thus, was found to have violated our Disciplinary Rules. Respondent has a prior history of discipline.

On September 10, 1990, this court in a similar case, *Office of Disciplinary Counsel v. [A]*, suspended respondent for a period of three years for commingling and conversion of client funds. Respondent in that case also had a prior history of discipline.

The disparity between the discipline imposed by this court in the *[A]* case (three-year suspension) and in the case at bar (three-month suspension) is unjustified. This court should not look lightly upon any case involving the conversion of client funds. I would suspend respondent in this case, like respondent in *[A]*, for a period of at least three years.

Justice Papadakos joins this dissenting statement.